IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| TYRONE SHELTON, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 7:20cv00704 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| LAWRENCE WANG, *et al.*, ) | By:   Hon. Thomas T. Cullen |
| ) | United States District Judge |
| Defendants. ) | |

Tyrone Shelton, a Virginia inmate proceeding *pro se*, filed this civil action under 42 U.S.C. § 1983 against correctional and medical staff at Green Rock Correctional Center ("Green Rock"), alleging that he was denied adequate medical treatment. This matter is before the court on the motions to dismiss of Dr. Wang, Nurse Cobbs, and Health Services Director Dillman, as well as the motion for summary judgment of Warden Davis.[1] Having reviewed the relevant portions of the record, the court will grant these defendants' motions.

I.

Shelton alleges that during a period of incarceration in the Virginia Department of Corrections ("VDOC") from 1991 to 2011, he had a history of bunion and hammertoe issues with his feet. During that time, Shelton claims that he received "special boots with steel plates" as suggested by a doctor. (Am. Compl. ¶ 3 [ECF No. 51].)[2] Shelton states that he "received the special boots every year up until he was released" from incarceration in July 2011. (*Id.*)

---

[1] Other defendants have filed a motion to dismiss that the court will address separately. (ECF No. 79.)

[2] Shelton's amended complaint (ECF No. 51) replaced his original complaint and all prior amendments and constitutes the sole complaint in this action. (*See* ECF No. 49)

In September 2018, Shelton re-entered the VDOC. He alleges that the doctor at his facility "acknowledge[d] that [he] was in need of special medical boots for support for both feet" and that the toes on his right foot were "severely deformed." (*Id.* ¶ 4.) Over the following year, Shelton saw many VDOC and specialty doctors concerning his feet issues. Shelton claims that on June 10, 2019, a specialist recommended that Shelton undergo surgery "to correct [his] right foot deformities" and recommended special boots "to provide support to both feet." (*Id.* ¶ 7.) On July 1, 2019, molds were made for Shelton's boots and "custom foot orthotics." (*Id.* ¶ 9.) On August 2, 2019, Shelton had surgery to correct "the deformity of two of the toes" on his right foot. (*Id.* ¶ 10.) On September 16, 2019, Shelton claims that he went to be fitted for his "approved and paid for orthopedic specialized boots," but due to complications of lingering swelling and pain from his surgery, they were unable to able fit the boots at that time. (*Id.* ¶ 13.) Before he could return for his final boot fitting, Shelton was transferred to Green Rock on November 6, 2019.

Upon his arrival at Green Rock, Shelton was "kept overnight in the medical center infirmary until defendant [Dr.] Wang could make an assessment about [Shelton's] orthopedic boots." (*Id.* ¶ 15.) Shelton claims that on November 7, Dr. Wang reviewed his medical records and, despite being "aware of" Shelton's previous surgery and his "need for the specialized boots," had Shelton transferred from the medical center to a general population housing unit. (*Id.* ¶ 16.) Shelton claims that he was given crutches but had "nothing on his feet but a pair of socks." (*Id.*)

On Friday, November 8, 2019, Shelton claims that he "injured his left ankle" while "traveling to the prison dining hall on crutches." (*Id.* ¶ 18.) Shelton alleges that he suffered

swelling and "extreme[] pain[]" from the injury and "medical personnel" placed him in the medical center's observation room until Dr. Wang could see him. (*Id.*) Dr. Wang examined Shelton on Monday, November 11, and released him back to general population housing. In response to being released to general population housing, Shelton went on a hunger strike "because he could not ambulate on his left foot because he injured it and he was unable to apply any pressure at all on his right foot due to the previous surgery." (*Id.* ¶ 19.) Because of the hunger strike, Shelton was placed in an administrative segregation housing unit. Shelton claims that while he was in segregation, he spoke with defendant Warden Davis and "explained to him that the hunger strike was a means of last resort to convince the prison administration . . . to get involved with procuring [Shelton's] specialized orthopedic boots." (*Id.* ¶ 20.) Shelton states that despite staying on the hunger strike until November 16, Dr. Wang and Warden Davis "never even considered the seriousness of [his] orthopedic condition []or his need for the boots." (*Id.*)

Shelton claims that on November 19, 2019, Dr. Wang ordered Shelton to be "released [] from the segregation unit to the prison['s] general population" housing. (*Id.* ¶ 21.) Dr. Wang also prescribed a wheelchair and a pair of "[C]roc[] shower shoes" for Shelton. (*Id.*)

In December 2019, Shelton claims that he "initiated" a regular grievance "in regard[] to [Dr.] Wang denying him the boots." (*Id.* ¶ 22.) Shelton alleges that Warden Davis deemed the grievance unfounded because defendant Nurse Cobbs "misle[d]" him and "averred to him that [Shelton] had no order in his medical records . . . for special boots."[3] (*Id.*) Shelton appealed

---

[3] In his response to the defendants' motions, Shelton submitted a copy of Nurse Cobb's response to Shelton's informal complaint about the "special boots" and Warden Davis's response to Shelton's regular grievance. (*See* Inf. Compl. Resp. [ECF No. 68-1 at 58]; Grievance Resp. Level I [ECF No. 68-1 at 61].) In the informal

Warden Davis's grievance response to defendant Health Services Director Dillman and alleges that "nothing was done."[4] (*Id.* ¶ 23.) Thereafter, in January 2020, Shelton claims he sent Warden Davis a copy of his medical records attached to an affidavit, showing that Shelton previously had an "order for special boots" before he was transferred to Green Rock and that they had "already been paid for." (*Id.*) Shelton argues that Warden Davis still "failed to act." (*Id.* ¶ 22.)

Shelton alleges that he "eventually started his therapeu[t]ic treatment but, without the support of the special boots, he could not continue the treatment due to his feet swelling up

---

complaint response, Nurse Cobbs states: "According to your medical record, there is not a current order for 'special' boots. Any order for special boots would have to be written by Dr. Wang. If you would like to discuss it again with him, you may submit a request form, and an appointment will be scheduled for you." (Inf. Compl. Resp. [ECF No. 68-1 at 58].) In deeming Shelton's grievance unfounded, Warden Davis stated:

> Upon further investigation of your allegations, it is noted that Nurse T. Cobbs, medical met with you on December 10, 2019 in an effort to resolve this matter. The response that you were given in the informal complaint is correct and stands. The order for the "special shoes" was written pre-operatively. The surgery co[rr]ected your deformity. Therefore, "special shoes are not medically necessary at this time. You have no current order for "special shoes" and as stated any order for special boots would have to be written by Dr. Wang.

(Grievance Resp. Level I [ECF No. 68-1 at 61].) Although Warden Davis states that the shoes were ordered preoperatively, the court notes that Shelton was fitted for them after his surgery. Nevertheless, Shelton does not allege that there was a current order for the boots from Dr. Wang.

[4] In his response to the defendants' motions, Shelton submits a copy of Health Service Director Dillman's response to his grievance appeal. (*See* Grievance Resp. Level II [ECF No. 68-1 at 66].) In deeming Shelton's appeal unfounded, Health Services Director Dillman stated:

> Based on the information provided and upon further investigation, I concur with the Level I response and have determined your grievance UNFOUNDED. Please note that the [Green Rock] physician is responsible for your medical care and will determine your indication for medical boots as your clinical needs change. According to the level I response, it is noted that you do not have an order for medical boots at this time.

(Grievance Resp. Level II [ECF No. 68-1 at 66].)

and the pain." (*Id.* ¶ 24.) Shelton states that he continued using the wheelchair that Dr. Wang had prescribed through the third week of April 2020, when Dr. Wang "had security staff confiscate" it. (*Id.* ¶ 25.) Shelton claims that during the period that he had the wheelchair, he "experienced moderate to severe pain in his legs, cramps, and stiffness in the joints of his legs." (*Id.*) Shelton claims that he was "forced" to continue wearing the Crocs shoes until August 2021. (*Id.* ¶ 26.) As a result of having to wear these shoes, Shelton states that his feet would "become numb from the coldness" during the winters; he suffered "chronic pain in the joints of his toes" and a "permanent, deep callus at the bottom of his right foot"; he "permanently" lost a toenail on his right big toe; he twisted his right ankle on "multiple occasions"; and he developed a "permanent large contusion" on his ankle joint that is "very painful and will have to be surgically removed." (*Id.*) Notably, Shelton does not allege that he made any of the defendants aware of the issues with the Crocs shoes.

Shelton alleges that after filing his original complaint in this action, on May 14, 2021, "prison personal property staff" issued him a pair of "Reebok sandals/shower shoes." (*Id.* ¶ 29.) On August 5, 2021, Shelton also received a pair of Sketchers memory foam sneakers and pair of Courtline sneakers, which he paid for. After receiving these shoes, his "moderate to severe pain," tingling, and numbness that he had been suffering for approximately 19 months, "subsided over a period of time as a result of wearing" the Sketchers sneakers. (*Id.* ¶ 40.) Shelton claims that he was able to "partake in all normal daily activities." (*Id.*) Shelton

was transferred to River North Correctional Center on October 8, 2021, and his sneakers were confiscated upon his arrival there.[5]

Shelton argues that Dr. Wang, Nurse Cobbs, Health Service Director Dillman, and Warden Davis were all deliberately indifferent to his serious medical need for "special boots."[6] Shelton seeks $7 million in compensatory and punitive damages against defendants Dr. Wang, Nurse Cobbs, Health Services Director Dillman, and Warden Davis.

Defendants Dr. Wang, Nurse Cobbs, and Health Services Director Dillman filed motions to dismiss, and Warden Davis filed a motion for summary judgment. All of the defendants argue that Shelton's allegations fail to state a cognizable claim against them, and Warden Davis also argues that Shelton failed to exhaust available administrative remedies as to the claim against him.

## II.

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering

---

[5] Shelton alleges other claims against the other defendants in his amended complaint, but the allegations do not relate to defendants Dr. Wang, Nurse Cobbs, Health Services Director Dillman, or Warden Davis and, thus, they are not recounted here. Further, Shelton does not allege that defendants Dr. Wang, Nurse Cobbs, Health Services Director Dillman, or Warden Davis were responsible for his care after he was transferred out of Green Rock.

[6] To the extent Shelton claims that Dr. Wang is not licensed to practice medicine and that the other defendants are liable for allowing him to practice medicine without a license, Shelton's allegations have no merit. Dr. Wang's medical licensing information is publicly available on the Virginia Department of Health Professions website and reflect that he has been licensed since September 1999 and that his license is currently active. *See* Va. Dep't of Health Prof., License Lookup, https://dhp.virginiainteractive.org/Lookup/Detail/0101222618 (last visited Sept. 19, 2022).

a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Legal conclusions in the guise of factual allegations, however, are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level," with all the allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor. *Id.*; *see Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005). Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Consequently, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.

To allow for the development of a potentially meritorious claim, federal courts have an obligation to construe *pro se* pleadings liberally. *See, e.g., Boag v. MacDougall*, 454 U.S. 364, 365 (1982). Moreover, "liberal construction of the pleadings is particularly appropriate where . . . there is a *pro se* complaint raising civil rights issues." *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *see also Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009). Nevertheless, "[p]rinciples

requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). "A *pro se* plaintiff still must allege facts that state a cause of action." *Scarborough v. Frederick Cnty. Sch. Bd.*, 517 F. Supp. 3d 569, 575 (W.D. Va. Feb. 8, 2021) (quoting *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999)).

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is inappropriate "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). But if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249−50 (internal citations omitted). In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See id.* at 255; *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). The non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874−75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315−16 (4th Cir. 1993) ("The summary judgment inquiry thus scrutinizes the plaintiff's case to

determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial."); *Sakaria v. Trans World Airlines*, 8 F.3d 164, 171 (4th Cir. 1993) (finding that the district court properly did not consider inadmissible hearsay in an affidavit filed with motion for summary judgment).

## III.

Shelton alleges that Dr. Wang, Nurse Cobbs, Health Services Director Dillman, and Warden Davis failed to provide him with adequate medical treatment for his feet. Shelton's allegations, however, do not establish that these defendants were deliberately indifferent to a serious medical need and, therefore, the court will grant their motions.

To state a cognizable Eighth Amendment claim for denial of medical care, a plaintiff must put forth facts sufficient to demonstrate that an official was deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Conner v. Donnelly*, 42 F.3d 220, 222 (4th Cir. 1994); *Staples v. Va. Dep't of Corr.*, 904 F. Supp. 487, 492 (E.D. Va. 1995). A prison official is "deliberately indifferent" only if he or she "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A claim concerning a mere disagreement between an inmate and medical personnel regarding diagnosis or course of treatment does not implicate the Eighth Amendment. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Harris v. Murray*, 761 F. Supp. 409, 414 (E.D. Va. 1990). In fact, "many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). An "error of judgment" on the part of prison medical staff or "inadvertent failure to provide adequate medical care," while perhaps sufficient to support an

action for malpractice, does not constitute a constitutional deprivation redressable under § 1983. *Boyce v. Alizaduh*, 595 F.2d 948, 953 (4th Cir. 1979), *abrogated on other grounds by Neitzke v. Williams*, 490 U.S. 319 (1989). Mere negligence does not constitute deliberate indifference; rather, a prison official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists and must draw the inference. *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998); *see also Farmer*, 511 U.S. at 837. The prison official's conduct must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. *Militier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990). In the context of a claim for deliberate indifference to medical needs, non-medical prison officials are entitled to rely on the judgment of medical professionals. *See Iko v. Shreve*, 535 F.3d 225, 242 (4th Cir. 2008) ("'If a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands.'" (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)) (alteration in original)).

**A.**

Shelton alleges that Dr. Wang provided inadequate medical treatment for his feet because Wang did not order "special boots" for Shelton. Shelton concedes, however, that he did receive medical care from Dr. Wang and others while he was housed at Green Rock. Upon his arrival at Green Rock, Shelton was immediately taken to the medical center and remained there until Dr. Wang could assess him. The next day, Dr. Wang reviewed Shelton's medical records, which included his long history of foot issues, and he determined that Shelton could be placed in general population housing with crutches. When Shelton later injured his ankle, medical staff placed him in the medical center's observation room until Dr. Wang could see

him. Dr. Wang examined Shelton the next business day, before releasing him back to general population. Later, when Shelton decided to end his hunger strike, Dr. Wang ordered Shelton's release back to general population housing and prescribed orthopedic shoes and a wheelchair for him to use. Shelton states that he began therapeutic treatment for his feet and continued to use the wheelchair until Dr. Wang discontinued this course of treatment nearly five months later.

Based on the pleadings, Dr. Wang timely responded to Shelton's medical complaints every time he was made aware of them. Shelton may not have agreed with Dr. Wang's decisions concerning his treatment, but a disagreement between a doctor and patient over the course of treatment does not demonstrate deliberate indifference or state a colorable Eighth Amendment claim. Nothing in the Shelton's pleadings suggests that Dr. Wang's treatment of Shelton was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Militier*, 896 F.2d at 851. Accordingly, the court cannot find that Dr. Wang was deliberately indifferent to a serious medical need of Shelton, and, therefore, it will dismiss Shelton's claims against Dr. Wang.

## B.

Shelton argues that Nurse Cobbs, Health Services Director Dillman, and Warden Davis had a duty to "ensure that [he] receive[d] adequate health care services and a continuation of specialized care," but "took no actions to ensure that he receive[d] the special orthopedic boots," and thus, they were deliberately indifferent to his serious medical needs. Shelton does not allege, however, that any of these defendants had the ability to provide Shelton with specialized medical treatment without a medical order from Dr. Wang. He also does not allege

that any of these defendants interfered with him receiving medical treatment at any time. Instead, he alleges that Nurse Cobbs misled Warden Davis in her informal complaint response by "aver[ing]" that Shelton had no order for special boots in his medical records. The informal complaint, however, reflects that Nurse Cobbs stated that there was not a *current* order for special boots in his medical record and that any order for special boots would have to be written by Dr. Wang.

Shelton alleges Warden Davis did not provide Shelton with the boots after Shelton explained to him that he was on a hunger strike as a "last resort" to try to convince prison administration to provide him with the boots. He also alleges that Warden Davis deemed Shelton's regular grievance about the boots as unfounded based on the misinformation from Nurse Cobbs' informal complaint response and subsequently "failed to act." The actual grievance response, however, indicates that Warden Davis investigated Shelton's claims and confirmed that Shelton's medical records did not contain an order from Dr. Wang for the boots.

Shelton asserts that Health Services Director Dillman did "nothing" in response to Shelton's grievance appeal. The grievance appeal response reflects that Dillman advised Shelton that the Green Rock physician was responsible for his medical care and would determine whether he needed medical boots and noted that Shelton did not have an order for medical boots at that time.

It is well-established that a response to a grievance or appeal, without more, does not give rise to a constitutional claim. *See, e.g.*, *Johnson v. Clarke*, No. 7:20cv717, 2021 U.S. Dist. LEXIS 74309, at *5–7 (W.D. Va. Apr. 19, 2021); *Brown v. Va. Dep't of Corr.*, No. 6:07cv33,

2009 WL 87459, at *13 (W.D. Va. Jan. 9, 2009) ("[T]here is no liability under § 1983 for a prison administrator's response to a grievance or appeal."). "Only persons who cause or participate in the violations are responsible. Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation." *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) (internal citations omitted); *see also Graham v. Aponte*, No. 1:08cv308, 2009 WL 249779, at *4 & n.4 (E.D. Va. Feb. 2, 2009) (finding no deliberate indifference on part of defendant whose only involvement was responding to plaintiff's request for administrative remedy); *Gupton v. Wright*, No. 7:15cv214, 2016 WL 524656, at *3 (W.D. Va. Feb. 8. 2016) (opining that § 1983 claims "concern[ing] nothing more than the responses" individual defendants "made to [plaintiff's] grievances and appeals. . . do not implicate any constitutionally protected right"). Because Shelton does not allege that these defendants were able to order the orthopedic boots themselves, or that they interfered with him getting medical treatment from Dr. Wang or other medical personnel, the court cannot find that they were deliberately indifferent to a serious medical need.[7]

To the extent Shelton seeks to hold either Warden Davis or Health Services Director Dillman liable as supervisors, his claims fail. It is well established that a supervisory government official cannot be held liable under § 1983 for the actions of his subordinates solely on the basis of *respondeat superior*. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–92 (1978). Nonetheless, a supervisory official may be liable for his subordinate's acts if the supervisor

---

[7] Moreover, they were relying on Dr. Wang's medical judgment. "If a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Iko v. Shreve*, 535 F.3d 225, 242 (4th Cir. 2008) (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)) (alteration in original)).

himself bears personal responsibility for those acts. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). "Liability in this context is not premised on *respondeat superior*, but on a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984).

> In order to prevail on a claim for supervisory liability, a plaintiff must show:
>
> (1) that the supervisor had actual or constructive knowledge that [his] subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)).

Establishing a "pervasive" and "unreasonable" risk of harm under the first element requires evidence that the conduct is widespread, or at least has been used on several different occasions, and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury. *Slakan*, 737 F.2d at 373−74. A plaintiff may establish deliberate indifference by demonstrating a supervisor's "continued inaction in the face of documented widespread abuses." *Id.* at 373. Overall, "[t]he plaintiff . . . assumes a heavy burden of proof in supervisory liability cases," for "[h]e must not only demonstrate that the prisoners face a pervasive and unreasonable risk of harm from some specified source, but he must show that the supervisor's corrective inaction amounts to deliberate indifference or 'tacit authorization of the offensive [practices].'" *Id.* at 372 (quoting *Orpiano v. Johnson*, 632 F.2d 1096, 1101 (4th

Cir. 1980)) (alteration in original). "[H]e cannot satisfy [this] burden of proof by pointing to a single incident or isolated incidents." *Id.*

Shelton's allegations do not establish any of the *Shaw* elements against Warden Davis or Health Services Director and, thus, Shelton has not alleged a cognizable supervisory liability claim against either of them.[8]

## IV.

Finding that Shelton's allegations fail to state a claim against them, the court will grant the motions to dismiss of Dr. Wang, Nurse Cobbs, and Health Services Director Dillman. In addition, finding no genuine dispute of any material fact as to the claims against Warden Davis and that Warden Davis is entitled to judgment as a matter of law, the court will grant Davis's motion for summary judgment.

The Clerk is directed to send copies of this Memorandum Opinion and the accompanying Order to the parties.

**ENTERED** this 26th day of September, 2022.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE

---

[8] Moreover, Shelton failed to exhaust available administrative remedies as to his claims against Warden Davis. The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). An inmate's failure to follow the required procedures of the prison's administrative remedy process, including time limits, or to exhaust all levels of administrative review is not "proper exhaustion" and will bar the claim. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). It is undisputed that Shelton did not file any informal complaints or grievances concerning his claims against Warden Davis, as required by VDOC Operating Procedure 866.1. (Aff. of S. Massenburg ¶¶ 11 & 12 [ECF No. 60-1].) Further, Shelton does not allege that administrative remedies were unavailable to him. Finding no genuine dispute of material fact, the court concludes that Shelton failed to exhaust available administrative remedies as to his claims against Warden Davis.