In The United States District Court
For The Western District Of Virginia
Roanoke, Division

CLERK'S OFFICE U.S. DISTRICT. COURT
AT ROANOKE, VA
FILED

SEP 22 2023

LAURA A AUSTIN CLERK
BY: _____
DEPUTY CLERK

Tyrone Shelton,
                    Plaintiff.

V.                  Civil Action No: 7:20CV00704

Lawrence Wang, Medical Practitioner;
Tara Colitis, Registered Nurse;
Jeffrey N. Dillman, Health Ser. Director;
Melvin Davis, Warden
B. L. Kanode, Warden
David Anderson, Warden
J. Coleman, Assistant Warden
Major R. Northrup, Chief of Security;
Major H. Sharpe, Chief of Security;
B. Morton Unit Manager
B. Idall, Unit Manager
M. McBride, Unit Manager
S. Richardson Unit Manager
P. Ridge, Captain of Security
R. Crosley, Lt. of Security
D. Joyce, Correctional Officer
D. Fetts, Correctional Officer
S. Snow, Counselor
S. Coughron, ADA Coordinator;

(1)

Joseph Ely, Unit Manager
C. Gilley, Registered Nurse
Major P. Hall, Chief of Security
Harry Smith, Medical Doctor
Tina Townsend, Registered Nurse
Defendants     1

All the Defendants are sued in their individual and official capacities.

Plaintiff's Second Amended Complaint

I.          Jurisdiction

1. This is a civil action and private suit authorized and pursuant to 42 U.S.C. § 1988 and 28 C.F.R. 35.172 to redress the deprivation under .....

(2)

1 If the Court accept this Second Amended Complaint as a whole, then defendants Claughron, Ely, Gilley, P. Hall, Smith and Townsend will have to be served.

. . . . . color of state law, of rights secured by federal law, 42 U.S.C. §§§§ 12101 et seq., 12131, 12132, 12133 and 29 U.S.C. § 794, and, the United States constitutions. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343. Under this jurisdiction, plaintiff request that the Court construed this complaint liberally and entreats the Court to consider his complaint adequately to state a claim if he outlines or adumbrates a violation of the constitutional and federal provisions upon which he relies and connects the violation to the named defendants in respect to this pro se status.

II          Facts

2. Plaintiff's prior medical history reflects that during his previous incarceration from 1991–2011, as a disabled . . . . . . .

. . . . . prisoner, that he had extensive foot surgery prior to entering the Virginia Department of Corrections (VDOC) for left foot bunions and hammertoes and, that Fred Schilling, Former Health Service Director for the VDOC approved for non-surgical treatment for plaintiff and recommended special boots with steel plates as suggested by Dr. Dencerath, VDOC Orthopedic Physician. Moreover, due to plaintiff's mobility impairments, he received the special boots every year up until he was released from the VDOC in July, 2011.

## Present Circumstances

3. When plaintiff re-entered the VDOC in September, 2018, the facility physician at Coffee Wood Correctional Center acknowledge that plaintiff was in need of special medical boots for support for both feet, and, that plaintiff's toes on his right foot was . . . .

(4)

. . . . . severely deformed.

4. The last week of Sept, 2018, plaintiff was seen by Dr. Leonard Leifin, to which he recommended that plaintiff have an off-site consultation at VCU medical Center, for right foot prominent bunion and hammertoes on toes 2-5, to which an appointment was scheduled for June 10th, 2019. And, as a result, surgery was recommended to correct the right foot deformities and [ special orthopedic boots was recommended from T.g. Powell to provide support for both feet]. Thus, was approved by Dr. Wenceroth.

5. Accordingly, Dr. Peter White, a foot and ankle specialist was recommended by Dr. Wenceroth and Dr. Vincent Dalton to conduct the surgery on plaintiff's right foot, and an appointment was scheduled for July 8th, 2019; and, as a result, surgery was scheduled for August 2nd, 2019.

6. During the interim, plaintiff had an off-site consult with Scott J. Campbell C-Ped at T. J. Powell in Richmond, Va. on July 1st, 2019, and, that plaintiff feet was placed in a foam mold and measurements was taken for the proper fitting of the boots and the custom foot orthotics. In addition, plaintiff discussed with Campbell that although he had reconstructed surgery in the 80's on his left foot, that he still have limited mobility of movement of his toes on his left foot and without proper boots, he suffers from severe chronic pain while walking, to which Campbell recommended rigid rocker soles and custom orthotics for the customized boots to minimize the pain and to allow normal daily activities for plaintiff without the pain. Moreover, plaintiff was scheduled to return to T. J. Powell's on a later date for fitting to ensure that the orthopedic boots and custom foot orthotics fit properly.

7. On August 2nd, 2019, during the course of surgery, plaintiff's big toe and second toes was broken ...

. . . . because they were fused at the joints, some of the bone was cut away and along with the built up of arthritis, both toes was straighten, a steel plate and screws was placed permanently on the top of his big toe and a seven to eight inch surgical pin was embedded from the tip of the second toe extended into the foot to keep the toe straight while it is healing and, then, a soft cast was placed for two (2) weeks to be replaced by a hard cast for four (4) weeks.

8. On September 13th, 2019, the hard cast and surgical pin was removed by Dr. White; however extreme swelling was noted and its associated pain.

9. Moreover, on Sept. 16th, 2019 plaintiff was seen again by Campbell from T.J. Powell('s) to be fitted for his approved and paid for orthopedic specialized boots; however, due to the complications of lingering swelling and pain of his right foot, Campbell . . . . .

(7)

. . . . . advised that it would be best if plaintiff return to be fitted for the boots after the swelling had reduced.

10. However, prior to plaintiff recieving his specialized boots at Lunenburg Correctional Center (LCC), he was transfered to Green Rock Correctional Center (GRCC) on Nov. 61st, 2019. Once plaintiff recieved his initial pre-screening as a new intake at GRCC medical center, the charge nurse working the night shift took notice that plaintiff was wearing a sock on his left foot and a post surgery boot on the right foot, thus, while he was ambulating on cruches. In addition once the charge nurse examined plaintiff's feet and his medical records, she determined that as a matter of her online training in the areas of American with Disabilities Act, State's laws and the VDOC's department procedures, that it was imperative to house plaintiff in the medical center over night to give Lawrence Wang, . . . . .

(8)

. . . . Medical Practitioner for
GRCC the opportunity to determine
the next course of action to provide
plaintiff with reasonable accommoda-
tions Regarding his mobility
impairment as a disabled prisoner;
Dr. Henceroth's mandatory standing
orders concerning the issuing of
the specialized boots from T. J.
Powell's and; to fall within the
legal mandates of the American
with Disabilities Act of 1990 (ADA).

11. On the morning of Nov. 7th,
2019, Wang reviewed plaintiff's
medical records and was aware of the
multiple surgeries plaintiff had on his
feet; the permanent placement of
the steel plate and screws; his need
for the specialized boots from T. J.
Powell's as recommended and
previously ordered by Dr. Henceroth
per standing orders as a continuity
for specialized care; his mobility
impairments and; his disabilities
and his need for reasonable
accommodations. But, yet,
Wang choosed to ignore Dr.
Henceroth's direct standing orders
that was required to be carried out
without hinderence and . . . . . . . .

. . . . . had plaintiff removed from the medical center to the facility general population on crutches with nothing on his left foot but a sock and a post surgery boot on his right foot in the middle of winter with snow on the ground.

12. Moreover, on the evening of Nov. 8th, 2019, plaintiff, while travelling to the facility dining hall ambulating on crutches he injured his left ankle, to which the following morning his ankle was swollen and extremely painful. Nevertheless, after the filing of general emergency grievances with the medical center medical personnel placed him in the medical center observation room until he could be seen by Wang.

13. On Nov. 11th, 2019, plaintiff was seen by Wang and once again, Wang issued directives releasing plaintiff back to general population; however, before he could be released, he went on a hunger strike, strictly because, he no longer could ambulate on his left foot and he was unable to . . . . . .

. . . . apply his full body weight on his right foot due to complications from the previous surgery.

14. Due to the hunger strike, plaintiff was placed in the administrative Restrictive Housing Unit (RHU) and during the course of his stay in RHU, he conversed briefly with Melvin Davis, Warden explaining that the hunger strike was a means of a last resort to convince his administration to get involved and provide the reasonable accommodations by procurring the specialized orthopedic boots to which as a matter of VDOC's departmental procedures, Virginia State Board of Corrections standards (BOC) and by delegated authority pursuant to state and federal laws was a duty placed in the hands of Davis and Wang when dealing with disabled prisoners. However, although plaintiff stayed on the hunger strike until Nov. 16th, 2019, suffering from stomach pains, cramps, nausea and weakness, . . . . . . .

(11)

". . . . Davis and Wang neither even considered plaintiff's disability, his serious orthopedic condition, nor the possibility of providing reasonable accommodations.

15. Furthermore, on Nov. 19th, 2019, the facility Institution Classification Authority (ICA) / Multi-Disciplinary Team (MDT) released plaintiff from the RHU to the general population since he came off the hunger strike and, per Nurse Mayo, Medical Administrator, at the hearing, Wang had furthered determined not to provide plaintiff with the said boots; but, she issued plaintiff a wheelchair temporarily. However, as a result of plaintiff having nothing to wear on his feet but socks, again, in the middle of winter, Major Russell Northrup, Chief of security, instructed his security staff to issue plaintiff a pair of "Croc" shower shoes to wear on his feet so that plaintiff could ambulate when he is not utilizing the . . . . . .

(12)

. . . . wheelchair and, also, the Croc's shower shoes would allow him to enter the facility dining hall to recieve his three (3) meals daily.

16. In the month of Dec., 2019, plaintiff initiated his Institutional Regular Grievance against Wang for denying plaintiff the necessary orthopedic boots approved by Dr. Moncrath, however, Davis responded to the grievance and determined that it was Unfounded; thus, based on misleading information he recieved from Tara Cobbs, Assistant Medical Administrator, who averred that there was no order in plaintiff's medical records for special boots. However, in the month of Jan., 2020, plaintiff sent Davis a copy of his medical records attached to an affidavit showing that T.J. Powell, had an order for specialized boots for plaintiff that was already approved and paid for and, that plaintiff was transfered to GROC before he could recieve the said boots while he was at Lunenburg . . . .

. . . . Corr. Center; but, Davis failed to act.

17. In the end, plaintiff appealed Davis decision to Jeffrey Dillman, Health Service Director, and nothing was done. Simply put, Dillman was the last hope in plaintiff procurring the specialized boots.

18. Accordingly applicable state and federal laws, the BOC standards and Departmental procedure mandated that Cobbs, Davis and Dillman collectively ensure that plaintiff recieve the specialized orthopedic boots as ordered and approved by Dr. Wenceroth based on his standing orders to provide the necessary and effective reasonable accommodations for plaintiff's needs as a disabled prisoner; thus, without Wang's approval.

19. In the month of Dec. 2019, plaintiff attempted to start his necessarily physical therapy for ambulation rehabilitation but, since he did not have the specialized boots for support, the said therapy was aborted.

20. In addition, in April, 2020, Wang discontinued the order for the use of the wheelchair, this forcing plaintiff to ambulate as best he could wearing the Croc shower shoes.

21. Basically, from Nov., 2019, up until August, 2021, plaintiff had no choice but to wear the hard orange plastic 'Croc' shower shoes with multiple holes in them; thus, through two (2) winters. Plaintiff feet would become numb from the coldness, to which caused moderate to severe pain and, once plaintiff was forced to ambulate around the facility for approximately one (1) year and four (4) months; thus, caused him to suffer from chronic pain in the joints of his toes; caused calluses to develope on the bottom of his right foot; caused him to twist his ankle on multiple occassions while wearing the 'Croc's', to which caused a permanent large contusion to develope in the joint of the right ankle that lasted eight (8) months and was extremely painful and, caused plaintiff to lose all arch support in both......

. . . . feet and a reduction in strenghtt in his ankles.

22. From approximately Nov. 19th, 2019, up until May 13th, 2021, Major Northrup gave his security personnel the directives to allow plaintiff to have access to the facility dining hall to recieve his meals and all other non-restricted buildings within the facility, while wearing the 'Croc' shluer shoes; thus, was very unusual, but, all staff was aware of the need to provide reasonable accommodations to afford plaintiff the opportunity to partake in the facility food services to recieve his well balanced nutritional diet daily; staff was aware of his mobility impairments and his on going legal issues as it relates to Wang and the special orthopedic boots.

23. On May 13th, 2021, plaintiff was on the facility recreation yard wearing the 'Crocs' when he was escorted from the said yard by security personnel and taken to the administrative RHU per orders of J. Coleman, Asst. Warden of GROU. In addition, . . . . . .

. . . . the next day, security personnel told plaintiff that per orders of Coleman and Northrup, that he would be released from RHU once he gave up the 'Croc's', so therefore, plaintiff did just that, and, due to plaintiff having nothing to wear on his feet, the facility personal properly personnel issued plaintiff a pair of 'Reebok' sandals / shower shoes to wear while he was ambulating around the facility.

24. Moreover, once plaintiff was released from RHU, he was allowed to enter the facility dining hall wearing the 'Reebok's' without any hinderance and/or interferences from security or administrative officials; thus, up until June 22nd, 2021.

25. On June 22nd, 2021, Correctional Officer D. Jayce who have been ensuring that plaintiff recieve entry into the facility dining hall to recieve his meals since Nov. 2019, decided to deny plaintiff entry to the dining hall to recieve his breakfast tray because he was wearing the 'Reebok' sandal / shower shoes. When Jayce denied plaintiff the access to the dining hall at lunch, he returned to his assigned building and . . . . .

. . . . . explained to B. Morton, Unit Manager and Lt. R. Crosley that he had been recieving all three (3) of his meals for approximately nineteen (19) months while wearing 'Croc' shower shoes and, that the 'Reebok' sandal shower shoes are no different; however, Morton and Crosley stated that plaintiff will not recieve his meals unless he is wearing state issued boots in the dining hall.

26. Thereafter, on June 24th, 2021, plaintiff written to the facility psychology department explaining that he is eating one (1) soup a day, thus, at his own expenses to compensate for not being fed by the facility officials.

27. On June 29th, 2021, plaintiff had an interview with Major Northrup based on an Constitutional Informal Complaint generated by plaintiff for being denied his meals, and, Northrup was very lucid when he stated that plaintiff will not recieve any meals unless he enters the facility dining hall with state . . . . .

(18)

. . . . . issued boots on his feet.

28.   Moreover, on July 7th, 2021, Captain P. Ridge transferred from night shift to the morning shift and, as a result, Ridge as Joyce direct supervisor, approved her decision not to allow plaintiff entry into the facility dining hall to recieve his meals unless he is wearing state issued boots.

29. Furthermore, on July 22nd, 2021 Coleman had an interview with plaintiff and admitted that he also gave his staff the directives to deny plaintiff entry into the facility dining hall, and, eventually the facility boulevard unless he is wearing state issued boots. However, Coleman explained that since plaintiff had been denied sixty two (62) meals at that point, then, Coleman agreed as a means to provide reasonable accommodations for plaintiff, to allow him to order two (2) pairs of appropriate footwear from an outside Vendor; thus, will allow plaintiff to have access to the facility boulevard and the dining hall to recieve his meals.   Also, temporarily, Coleman gave directives to his staff to ensure that plaintiff meals be brought . . . .

. . . . . to his assigned building until the sneakers arrive.

30. Plaintiff ordered two (2) pairs of sneakers from Union Supply, a distribution center that had been approved by the VDOC's to supply all its facilities with accessories. And, in August, 2021, plaintiff recieved the first pair of tennis shoes and the second pair in September, 2021.

31. Eventually, on July 29th, 2021, B. L. Kanode, Warden of GROC, responded to plaintiff's grievance as it related to being denied sixty three (63) meals straight and, Kanode rendered the grievance as being Unfounded and he agreed entirely with his staff decisions and, later, on a direct appeal Carl Manis, Regional Administrator, concurred with Kanode. However, Kanode and Manis decisions was in conflict with their legal duties owed to plaintiff, for they were aware that by delegated authorities per state and federal laws, the BOC and the promulgated VDOC's departmental procedures that all prisoners . . . .

. . . . are required to recieve either three (3) meals daily and/or a well balanced nutritional meal daily and, that, for disabled prisoners, reasonable accommodations must be made to ensure that they are able to partake in the food services activities offered to prisoners by the state's VDOC.

32. Because of the low amount of calories that the soups provided to plaintiff while he was feeding himself, he suffered from dizziness, stomach cramps and weight lost from not recieving the well balanced dietary meals from the facility dining hall.

33. On Oct. 8th, 2021, plaintiff was transferred from GROC to River North Correctional Center (RNCC), and, upon his arrival, both pair of sneakers that was provided at GROC by Coleman as reasonable accommodations to give plaintiff access to the dining hall, was confiscated by D. Zeltor, Personal Property Officer. One (1) . . . .

(21)

. . . . . pair was taken directly off of plaintiff's feet by Zelts and when plaintiff explained to Zelts his need for the sneakers as temporary support due to his serious mobility impairment, Zelts stated:

'These sneakers will eventually be supporting someone else's feet.'

34. Moreover, on Oct. 12th, 2021, plaintiff filed an Institutional Informal Complaint to the attention of W. Sharpe, Chief of Security, Zelts supervisor, explaining that he have nothing to wear on his feet for support; however, S. Snow, the Temporary Grievance Coordinator, forwarded the Informal complaint to Zelts for a response, knowing that he was the subject of the complaint and, as a result, nothing was done.

35. Furthermore, on Oct. 13th, 2021 plaintiff was assigned to D-Building under the supervision and care of B. Idall, Unit Manager, who by state and federal laws took (the online) American with Disabilities Act of 1990 course and recieved his certificate, and he lucidly knew the . . . . . . . .

. . . . legal mandates when dealing with disabled prisoners; however, Idall recieved several Institutional Emergency Grievances from plaintiff explaining that as a disabled prisoner, he is forced to ambulate around in his building wearing only socks on his feet, and that this could subject plaintiff to irreparable damages and perosnal injury; but, yet Idall took no actions to provide temporary reasonable accommodations, but left plaintiff with only his socks to wear.

36. On Oct. 14th, 2021, plaintiff was seen and evaluated by Tracy Mathena, Medical Doctor for RNCC, and, after reviewing plaintiff's medical records, Mathena asked plaintiff where was the special orthopedic boots Dr. Wencerroth approved for him to have in June of 2019, and, when plaintiff explained that Wang refused to send him back to Dr. Powell's to recieve them two (2) years ago, Mathena promptly ordered a rushed order for orthopedic boots and he directed that plaintiff . . . .

. . . . . be scheduled for an appointment with the contracted physical therapist; also, Nethena ordered that an interoffice e-mail be sent out to David Anderson, Warden of RRC and Zelts requesting that reasonable accommodations be made to provide plaintiff with the sneakers that was confiscated. Thus, until plaintiff has had the opportunity to be seen by the "C-Ped" and have received the special orthopedic boots. But, Anderson refused to respond and Zelts returned e-mail stated:

"These shoes (sneakers) are not medical; he (plaintiff) purchase these from an outside vendor himself . . . this violates policy and he will have to get shoes from orthotics unless Warden Anderson approves them."

37. In addition, on Oct. 26th and Nov. 3rd of 2021, plaintiff filed Institutional Regular Grievances to the attention of Anderson trying to retrieve the sneakers until he recieve the medical orthopedic boots. but, again, Snow intentionally refused to process both regular grievances under . . . . . . .

(24)

. . . . false pretenses to protect Anderson and Zelts from future lawsuits, and, to prevent plaintiff from redressing the issue externally within the VDOC's.

38. On Nov. 10th, 2021, plaintiff had his first session with S. McGrady, Physical Therapist,[1] and, McGrady determined that plaintiff lost all arch support and a maximum amount of strength in his ankles from walking incorrectly in shower shoes for approximately two (2) years once Wang denied plaintiff access to the necessary orthopedic boots with custom orthotics for support; plus, plaintiff was issued a cane permanently to increase his stability.

[1] Plaintiff was unable to start his physical therapy in Dec. 2019 because Wang denied him the necessary boots he would have needed for support during the therapy to which consisted of ambulation rehabilitation.

39. ~~26.~~ Next, M. McBride and S. Richardson was systematically the Unit Manager for A-Building between Dec. 7th and Dec. 12th of 2021, and both of them was aware of plaintiff's disabilities and his medical order for special orthopedic boots; however, on several different occassions they responded to plaintiff's Emergency Grievances bringing it to their attention that plaintiff was being denied access to the food services activities to recieve his meals due to being restricted from the facility dining hall while wearing "Zlip-flop" shower shoes on his feet; but, yet, neither McBride or Richardson took the initiative to provide any reasonable accommodations to ensure that plaintiff recieve his meals. And, as a result, plaintiff was denied sixteen (16) meals. Thereafter, plaintiff filed complaints to Sharpe and Anderson about not being fed, but, both of them tacitly authorized McBride and Richardson actions.

(26)

40. And, once again, just like GROC, plaintiff was forced to eat a soup a day out of his commissary purchase instead of recieving a well balanced nutritional meal from the facility food services. Thus, causing plaintiff to suffer from weights lost, dizziness, nausea, stomach cramps, and pain.

41. Between March and May of 2022, plaintiff recieved the specialized orthopaedic boots at RYCC that defendants Wang, Colbus, Davis and Dillman denied him at GROC in Nov. 2019; and, as a plus, he also recieved a pair of specialized tennis shoes. In addition, over a period of time during his physical therapy at RYCC, the ambulation rehabilitation caused the contusion within the joint of plaintiff's right ankle to decrease. Thus injury plaintiff had sustained at GROC while wearing the 'Croc' shower shoes.

¶2. On Sept. 16th, 2022, plaintiff was transferred from RRCC to Wallen's Ridge State Prison (WRSP), and, upon his arrival, during the course of the intake medical screening, plaintiff explained to Nurse C. Jilley, Registered Nurse, that the specialized boots he was wearing was medically necessary due to his mobility impairment, however, Nurse Jilley refused to intervene when Josiah Ely, Unit Manager, gave security personnel orders to confiscate the boots, thus, was alleged to have been directives passed down by Melvin Davis[2] Warden of WRSP and Major T. Hall, Chief of Security.

¶3. And, for the third time in two (2) years, ten (10) months and three (3) different facilities, plaintiff was forced to wear a form of ahaub shoes on his feet.

(28)

_____

2  Remember that Melvin Davis was one of the original defendants when the complaint was initially filed. Davis was relocated from ROC to WRSP.

44. Nevertheless, plaintiff was seen by Dr. Mullins, medical Doctor for ODRSP on Sept. 23rd, 2022, and Dr. Mullins determined that the specialized boots and tennis that was confiscated by Ely was medically necessary based on plaintiff's medical history, mobility impairment, disabilities and Dr. Henceroth approval and Dr. Mullins written an order requiring that the said footwear be returned to plaintiff; however, Nurse Jilley consulted with Major T. Hall on Sept. 26th, 2022, and, as a result, Jilley thereafter explained to plaintiff that the footwear in question will not be returned to him because both pair had shoestrings (laces) in them.

45. Thereafter, plaintiff took the liberty on Oct. 2nd, 2022 to address the issue with Nurse Tina Townsend, Registered Nurse / Medical Administrator and S. Caughron, Operations Manager / ADA Coordinator but, both of these individuals who have been trained in the areas of ADA and was aware of the legal mandates, refused to intervene as their job description requires . . . . .

. . . . them to do when dealing with a disabled prisoner; thus, even after plaintiff explained that he has had nothing to wear on his feet but flip flop shower shoes.

46. Moreover, on Oct. 3rd, 2022, plaintiff was seen by Dr. Jappay Smith, Medical Doctor for WRSP as well, and Dr. Smith in an act to cover-up Ely, Davis, Major T. Hall, Gilley, Townsend and Caughron actions, he decided to override Dr. Mullins' initial decision by stating:

"Went to speak with Shelton . . . . explained security position and my efforts to help him and I ordered new evaluation for footwear for this level and palace. [3] . . . Shelton got mad saying what about recreation . . . [4] . . . what is he suppose to wear . . . Shelton quoted regulations . . . I told Shelton that appointment are ordered and pending."

(30)

[3] When Dr. Smith stated 'new evaluation for footwear for this level and palace,' what the meant was that every effort will be made by him and Townsend to ensure that plaintiff do not recieve any boots and, that the tennis shoes have no carbon plate and/or rocker soles; thus, to placate Major T. Hall.

[4] Dr. Smith also stated that plaintiff will remain in the administrative RHU office he had no support for his feet; thus, until he recieve his footwear, but plaintiff will not be able to participate in any outdoors exercises.

47. Also, on Oct. 26th, 2022, Warden Davis responded to plaintiff's grievance as it relates to being denied reasonable accommodations and the lucid case of interferring with medical treatment once parbscribed concerning the said boots, and Davis stated in response:

"Shoes with laces are not allowed for inmates possession."

48. Finally, after filing numerous complaints, on Feb. 1st, 2023 plaintiff was seen by Dr. Mullins, and he explained that a call was made by him to Idanger Clinic and that plaintiff will be recieving the orthopedic boots and tennis shoes with the carbon palate.

49. The entire time plaintiff was in RDU, he was not able to partake in any outdoors exercise for approximately eight (8) months, and, he had to have physical therapy again because his orthopedic condition began to degenerate. He lost majority of the strengh in his ankles to which a walker was prescribed to help him ambulate; plus, pain suppressant medication was prescribed to plaintiff.

50. On May 18th 2023, plaintiff recieved his medically neccessary specialized orthopedic boots and tennis shoes once again.

## III.                    Claims      [5]
## Claim I

50. Defendant Wong, a self proclaimed licensed medical doctor, whose credentials are questionable in the areas as a general internist, did show the existence of unfair and unneccessary discrimination and prejudice against plaintiff who is a disabled prisoner with mobility impairments; thus, by discriminating with the specialized health care services and denying plaintiff the medically neccessary reasonable accommodations of orthopedic boots with custom orthotics by standing orders of Dr. Danceroth as a continuity of 28 years of care for plaintiff's handicap condition, to which denied plaintiff the . . . . . . . .

(32)

[5] Since the Court have already dismissed the Eighth and Fourteenth Amendment Claims against Wong Caliva Davis and Tillman, then, plaintiff will not add those particular claims.

". . . . opportunity to compete on an equal basis as non-disabled prisoners when dealing with every day prison life activities and pursuing job opportunities. Also, caused plaintiff to injure himself, subjected him to nineteen (19) months of moderate to severe chronic pain, mental anguish, emotional distress, depression, anxiety and caused his orthopedic condition to degenerate to which necessitated six (6) months of physical therapy to repair the damages. Thus, infringement upon plaintiff's ADA rights is in direct violation of the American with Disabilities of 1990.

Statement of Facts, para. 11-21, at 9-16.

Claim II

51. Defendants Dillman, Davis and Colilla was aware of the legal mandates related to ADA, the promulgated VDOC's departmental procedures governing disabled prisoners and their legal obligations; but, yet, when these defendants discovered . . . .

(33)

. . . . that plaintiff have been a disabled prisoner for 28 years and have been recieving specialized orthopedic boots from Dr. Weinroth for support due to his mobility impairments, and took no actions to ensure that plaintiff recieve the boots as reasonable accommodations when being discriminated against plaintiff (these defendants actions and inactions showed the existence of unfair and unnecessary discrimination and prejudice and was a causative factor iso plaintiff's deprivations, damages and resulting injuries (Claim I). Thus, infringement upon his ADA rights violates the American with Disabilities Act of 1990.

Statement of Facts, para. 14, 16-21, at 11, 13-16.

## Claim III

52. Defendants Kanode, Coleman, Northrup, Ridge, Crosby, Morton and Joyce collectively, was aware of plaintiff's disabilities and that for approximately 19 months he had been entering the prison dining hall to recieve his three (3) meals wearing the 'Croc' shower . . . . .

(34)

. . . . . shows as a reasonable accommodation provided by Northrup, however, when these defendants used plaintiff's disability as a means to deny him his (6) meals, banned him from participating in the food services activities; outdoors recreation; subjected him to mental anguish, emotional distress, depression, anxiety, weight lost and; denied him the equal basis as non-disabled prisoner's; thus, showed the existence of unfair and unnecessary discrimination and prejudice against plaintiff and, also, showed a deliberate indifference and cruel and unusual punishment and an infringement upon his ADA rights. In violation of the Eighth and Fourteenth Amendment to the United States constitutions and, the American with Disabilities Act of 1990.

Statement of Facts, para. 25-32, at 16-21.


<u>Claim IV</u>

53. Defendants Anderson, Sharpe, Hall and Zelts was aware of plaintiff's disability and mobility impairment but, yet, these defendants . . . . . .

(35)

showed the existence of unfair and unnecessary discrimination and prejudice against plaintiff when they collectively confiscated, tacitly authorized the confiscation and/or had knowledge of the confiscation of the only means he had as support for his mobility impairment and disability as provided by Coleman, and, caused plaintiff to ambulate with only socks on his feet even after the facility medical doctor recommended that the tennis shoes be returned to plaintiff temporarily until his special boots arrive as a form of reasonable accommodations, thus, causing the reoccurrences of several injuries and damages as complained of in Claim I, supra. Thus showing a deliberate indifference and the infringement upon plaintiff ADA rights. In Violation of the Eighth and Fourteenth Amendment to the United States constitution and the American with Disabilities Act of 1990.

Statement of Facts, para. 33-38, at 21-25.

## Claim V

54. Defendant Snow was aware of plaintiff's disability and the potential risk to his health and safety without the support for his feet, for, Snow had taken the on-line American with Disabilities Act of 1990 course and had recieved her certificate and understand the legal mandates as it relates to disabled prisoner's; however, on several occassions, Snow elected to interfer and/or sabotage plaintiff's efforts in redressing the issues involving defendants Anderson, Sharpe, Hall and Zetts (Claim IV), supra., with higher departmental officials. Thus, showing the existence of unfair and unnecessary discrimination and prejudice against plaintiff, to which can be seen as a contribution to plaintiff's resulting injuries and damages. Thus, showing a deliberate indifference and, the infringement upon plaintiff's ADA rights. In violation of the First, Eighth and Fourteenth Amendment to the United States constitution and, the American with Disabilities Act of 1990. Statement of Facts, para. 34 and 37, at 22 and 24.

## Claim VI

55. Defendants McBride, Sharpe, Richardson and Anderson was aware of plaintiff's disability and mobility impairment, and that, when he initially arrived at Rüler North that Zelts confiscated the only means (sneakers) plaintiff had for support on his feet; plus, these defendants was also aware that plaintiff had a pair of medical orthopedic boots on order, however, these defendants collectively used plaintiff's disability as a means to deny him eventually 22 meals; thus, subjecting plaintiff to stomach cramps, nausea, pain, mental anguish, emotional distress, depression, anxiety and weight lost, to which showed the existence of unfair and unnecessary discrimination and prejudice against plaintiff, showed a deliberate indifference and an infringement upon his ADA rights. In violation of the Eighth and Fourteenth Amendments to the United States constitution and, the American with Disabilities of 1990.

Statement of Facts, para. 39-40, at 26-27

(38)

## Claim VII

56. Defendants Davis, Ely, Gilley, Smith, Caughron, T. Idall and _____, collectively, was aware that plaintiff is a disabled prisoner who has mobility impairments and, that it is important that he have complete access to his orthopedic with custom orthotic boots as reasonable accommodations for support to minimize the potential risk to his health and safety; however, these defendants collectively either authorized the confiscation of his specialized boots and tennis shoes and/or tacitly authorized the said actions, and, also, interferred with the facility medical doctor's orders that the said footwear be returned to plaintiff, to which left him with nothing on his feet. And, as a result, these defendants have caused plaintiff to suffer from moderate to severe "chronic" pain; denied him the opportunity to partake in outdoors recreation and, caused him to be assigned to the administrative RDU because of his disability. Thus, eventually subjected plaintiff to physical therapy due to his degeneration of his orthopedic condition; . . . . .

. . . . . caused him mental anguish, emotional stress, depression and anxiety. This showing the existence of unfair and unnecessary discrimination and prejudice against plaintiff, and, showed a deliberate indifference and the infringement upon plaintiff's ADA rights. In Violation of the Eighth and Fourteenth Amendment to the United States constitution and the American with Disabilities Act of 1990.

## IV.              Relief

Wherefore, plaintiff requests that the Court grant the following relief:

A. Award compensatory damages in the following amounts:

1. $100,000.00 dollars jointly and severely against defendants Wang, Celiko, Davis and Dillman for showing a deliberate indifference towards plaintiff and, for discriminating against him as a disabled prisoner and for his pain and suffering;

(40)

2. $ 25,000.00 dollars jointly and severely against defendants Kanode, Coleman, Northrups, Ridge, Crosley, Morton and Joyce for showing a deliberate indifference towards plaintiff, cruel and unusual punishment and, for discriminating against him as a disabled prisoner and for his pain and suffering;

3. $ 3,000.00 dollars jointly and severely against defendants Felts and Snow for showing a deliberate indifference towards plaintiff and, for discriminating against him as a disabled prisoner and, for his pain and suffering;

4. $ 5,000.00 dollars jointly and severely against defendants Wall, Sharpe, Anderson, Richardson, McBride, Ely, Caughron, Gilley, Major T. Wall, Smith, and Townsend for showing a deliberate indifference towards plaintiff and, for discriminating against him as a disabled prisoner and, for his pain and suffering.

B. Award punitive damages in the following amount:

5. $75,000.00 dollars each against the defendants Wang, Caldes, Davis and Dillman, for their malicious disregard for plaintiff's health and safety;

6. $10,000.00 dollars against each of the defendants Kanode, Coleman, Northrup, Ridge, Crosley, Morton and Joyce for their malicious disregard for plaintiff's health and well being;

7. $3,000.00 dollars against each of the defendants Anderson, Sharpe, Idall, Zelta, Isnaul, McBride, Richardson, Ely, Coughron, Gilley, Major T. Idall, Smith and Townsend for their malicious disregard for plaintiff's health and safety.

d. Trial by jury.

September 17th, 2023                Tyrone Shelton
                                    Prose / Plaintiff

(1/2)

Certificate of Service

I, hereby certified that a true and correct copy of the foregoing was mailed, by the U.S. Postal Service to the following:

Dorothy Patricia Wallace, Esq.
Asst. Attorney General
202 North 9th, Street
Richmond, Va. 23219

And

Anthony Cotton, Esq.
Byrne Legal Group
3117 W. Clay Street, Suite 200
Richmond, Va. 23230

on this 17th day of September, 2023.

Tyrone Shelton
Pro se / Plaintiff

Tyrone Shelton, # 1040346
Bldg. D / 308
Red Onion State Prison
P. O. Box 970
Pound, Va. 24279

VA DEPTARTMENT OF C
HAS NEITHER CENSORE
ITEM THEREFORE THE D
NOT ASSUME ANY RESP
FOR IT'S CONTENTS

3.27

Office Of
United St
210 Frank
Roana

ORRECTIONS
ED OR INSPECTED
DEPARTMENT DOES
PONSIBILITY



US POSTAGE PB PITNEY BOWES

ZIP 24279   $ 003.27⁰
02  4W
0000366944 SEP . 19  2023

The Clerk
ates District Court
lin Rd, Rm 5⁄0
e, Va. 24011

RECEIVED
DATE

SEP 20 2023

MAILROOM